Mark HALL, Plaintiff,

v.

James CONKLIN, et al., Defendants.

No. 2:94–cv–333.

United States District Court,
W.D. Michigan,
Northern Division.

April 1, 1996.

Mark Hall, Baraga, MI, pro se.

Christine M. Campbell, Frank J. Kelley, Attorney General, Corrections Division, Lansing, MI, for Defendants.

## OPINION REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND PENDING MOTIONS

QUIST, District Judge.

Plaintiff is a *pro se* prisoner within the Michigan Department of Corrections. He filed this civil rights action under 42 U.S.C. § 1983, alleging numerous violations of his constitutional rights, including equal protection, access to the courts, and freedom from cruel and unusual punishment. Plaintiff has named as defendants various corrections officials, and has sought damages and injunctive and declaratory relief.

United States Magistrate Judge Doyle A. Rowland submitted two Reports and Recommendations in this case. Among other rulings, the Magistrate Judge recommended that defendants' Motion for Summary Judgment be granted in part and denied in part. The Magistrate Judge recommended that all of plaintiff's requests for relief be dismissed, except that against defendants Wright, Westwood and VanOchten concerning the opening of incoming mail to plaintiff from the Michigan Attorney General's Office. On this claim, it was recommended that plaintiff's

request for declaratory judgment be granted, and that these defendants' defense of qualified immunity be denied. Now before the Court are objections by both plaintiff and defendants. Pursuant to 28 U.S.C. § 636(b), the Court makes *de novo* review of those portions of the Report and Recommendation to which objection has been made. This Opinion will also address plaintiff's Motion for Joinder of Claims (docket no. 57) and Motion for Finding a Rule 11 violation (docket no. 62).

### Plaintiff's Objections

■ First, plaintiff alleges the Magistrate erred by finding that plaintiff suffered no denial of access to the courts as a result of defendants' refusal to photocopy forms for plaintiff in connection with preparing this lawsuit. Plaintiff's burden of proof on this issue is to establish that he suffered serious impairment in his access to the courts. *Allen v. Sakai*, 48 F.3d 1082, 1089 (9th Cir. 1984), *cert. denied sub nom., Sakai v. Smith*, 514 U.S. 1065, 115 S.Ct. 1695, 131 L.Ed.2d 559 (1995). W.D. Mich. L.R. 25(a) states that the Court will provide forms for a § 1983 action upon request. In light of this local rule, plaintiff's access to the court was not impeded. Thus, assuming the allegations in plaintiff's complaint are true, and even assuming plaintiff offered to pay full cost for the copying, plaintiff suffered no prejudice by defendants' refusal to photocopy.

Plaintiff also disputes the Magistrate Judge's statement of law that in order to establish a violation of the equal protection clause, plaintiff must show that he was victimized because he was a member of a suspect class. Plaintiff cites *Moss v. Clark*, 886 F.2d 686 (4th Cir.1989), a decision plaintiff claims changed this test. Plaintiff has misconstrued either *Moss* or the Magistrate Judge's ruling, or both. *Moss* is consistent with the law in the Sixth Circuit which was cited by Magistrate Judge Rowland. *See Newell v. Brown*, 981 F.2d 880, 887 (6th Cir.1992), *cert. denied*, 510 U.S. 842, 114 S.Ct. 127, 126 L.Ed.2d 91 (1993). At no point does *Moss* undermine *Newell's* ruling that a plaintiff can "not make out a violation of his equal protection rights simply by

showing that other inmates were treated differently." *Id.* Plaintiff's equal protection allegations do nothing more than show that plaintiff received treatment different from that given to another inmate. Thus, plaintiff's objection in this respect is without merit.

■ Plaintiff further claims that he suffered unnecessary infliction of pain from defendants' denial of medical care. Plaintiff makes several references to his complaint, but fails to take issue with the factual or legal conclusions by the Magistrate Judge on this issue. As the Report and Recommendation set forth, from the date of his admission to prison until the filing of his complaint in this Court, plaintiff failed to demonstrate a substantial risk of serious harm and a conscious disregard of that risk by defendants. *Farmer v. Brennan*, 511 U.S. 825, 838–40, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Brooks v. Celeste*, 39 F.3d 125, 128–29 (6th Cir.1994). Plaintiff's ingrown toenail and vague, undocumented psychological-related complaint do not constitute serious harm under any legitimate legal standard. Plaintiff's claims in this regard must therefore be dismissed.

Plaintiff also argues that the Magistrate Judge failed to address plaintiff's unchallenged claim that defendants opened plaintiff's mail from the Attorney General on five occasions, and withheld mail for 3–4 days. This objection has no merit. The Magistrate Judge made a comprehensive outline and analysis of the claims set forth in plaintiff's amended complaint. He made specific reference to the isolated incident of delay, and addressed the mail-opening issue in a lengthy discussion which, in the end, favored plaintiff.

### Defendants' Objections

Defendants assert that on the issue of the opening of Attorney General mail, their actions were constitutional and this Court should grant them qualified immunity. Defendants argue that there was no previously established law that prohibited their actions, and that a reasonable person in defendants' position would not have understood there was an affirmative duty to refrain from those actions. Defendants contend that plaintiff

has shown no prejudice and, in fact, that plaintiff has admitted that he suffered no prejudice. Defendants cite the Corrections Department's implementation of a new mail policy in November 1994, as support for their contention that this policy was designed to meet the concerns expressed in the majority opinion in *Muhammad v. Pitcher*, 35 F.3d 1081 (6th Cir.1994). Defendants also claim that with respect to mail from the Attorney General that is public record, there is no confidentiality to protect. Further, defendants argue that plaintiff has no particularized right; they contend that although plaintiff has a general right of access to the courts, plaintiff enjoys no clearly established right to have non-confidential correspondence from the Attorney General opened outside of his presence. Defendants argue that the new policy, requiring that mail be marked "privileged" or "confidential" in order to qualify for opening in the presence of the prisoner, satisfies all relevant case law and is constitutional.

In response, plaintiff argues that defendants shoulder the burden of proving qualified immunity. Plaintiff claims that defendants were aware of the *Muhammad* case before opening plaintiff's legal mail three months after *Muhammad,* and that defendants violated *Muhammad* on many occasions. Plaintiff claims he should receive compensatory damages, and believes defendants have violated the Michigan Rules of Professional Conduct by arguing that plaintiff has admitted he suffered no prejudice from defendants' conduct. Plaintiff claims that special labeling of mail has been ruled unconstitutional since 1987 in *Thornley v. Edwards,* 671 F.Supp. 339 (M.D.Pa.1987).

This Court has spent considerable time and effort analyzing the various legal decisions which govern on the issue of the opening of Attorney General mail to prisoners. For the reasons set forth below, the Court concludes that qualified immunity is appropriate in this case, and that plaintiff's claims for damages and declaratory relief on the mail opening issue should be dismissed.

*1. The Mail Policy Dated November 2, 1994, is Constitutional.*

 First of all, this Court holds that the November 2, 1994, policy of the Michigan Department of Corrections is constitutional. The Michigan Department of Corrections adopted this policy in an attempt to comply with *Muhammad v. Pitcher,* 35 F.3d 1081 (6th Cir.1994). This policy changes the previous policy, which did not require that mail from the Attorney General's Office or a prosecuting attorney be treated as "legal mail." Pursuant to the November 2, 1994, policy, corrections personnel are required to treat mail from the Attorney General or prosecuting attorney as legal mail to be opened only in the prisoner's presence if the following conditions are met: (1) the prisoner has so requested; (2) the envelope contains the full name of a licensed attorney as a part of the return address; and (3) the envelope is clearly marked "Privileged" or "Confidential," or specifically states that the envelope is to be opened only in the prisoner's presence.

 Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The Michigan Department of Corrections may require that inmates specifically request that their legal mail be opened in their presence. *Knop v. Johnson,* 667 F.Supp. 467, 473 (W.D.Mich.1987), *appeal dismissed,* 841 F.2d 1126 (6th Cir.1988). Also, a prison can restrict opening of special mail in the presence of the inmate to those situations wherein the sender is identified as an attorney and the envelope makes a specific restriction on the opening. *Wolff v. McDonnell,* 418 U.S. 539, 576–77, 94 S.Ct. 2963, 2984–85, 41 L.Ed.2d 935 (1974). With regard to mail from an inmate's attorney, prison officials have a right to open and inspect such mail for contraband. However, they may not read the mail and must allow the prisoner to be present, upon request, if the envelope is marked as confidential. *Lavado v. Keohane,* 992 F.2d 601, 607–09 (6th Cir.1993); *see also Brewer v. Wilkinson,* 3 F.3d 816, 825 (5th Cir.1993) (court abandoned the *per se* rule that the Constitution requires that the opening and inspection of legal mail

be in the presence of the inmate), *cert. denied,* 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994).

The Sixth Circuit has ruled unconstitutional a prison policy that treated all mail from the Attorney General's Office as ordinary mail, even if an inmate notified the mailroom that a certain piece of mail was confidential. *Muhammad v. Pitcher,* 35 F.3d 1081 (6th Cir.1994) (majority opinion). The *Muhammad* court recognized the privacy interests involved in a "response from the Attorney General to a confidential inquiry" from an inmate. *Id.* at 1083. The Court noted the prejudicial flaw in the challenged, former policy was that "mail from the Attorney General is *never,* under any circumstances, to be treated as legal mail." *Id.* at 1084 (emphasis in original). The new policy, under consideration in the instant case, cures that flaw. The new policy ends the prior rule which treated all Attorney General correspondence alike.

Unlike in *Muhammad,* there is now a bright-line rule and clear protections for mail involving an inmate who sought advice, assistance or redress of grievances from the Attorney General. In essence, the November 2, 1994, policy treats certain mail from the Attorney General the same as mail sent by the prisoner's own attorney. The new policy cures the concerns of the *Muhammad* court by honoring the confidentiality of correspondence that is marked "confidential." The policy eliminates the need for corrections personnel to supervise the opening of multiple service copies of Attorney General defense pleadings and other such papers that are in the public record. The means for ensuring confidentiality are clear and easy. As officers of the court, attorneys from the Attorney General's Office (and prosecuting attorneys) should be expected to honor all confidential matters as such. Because the First Amendment policy concerns of confidentiality that underlie *Muhammad* are accommodated by the policy at issue, that policy is in harmony with the Constitution.

2. *Even if the November 2, 1994, Mail Policy is Not Constitutional, Defendants Are Entitled To Qualified Immunity.*

Next, even assuming that the November 2, 1994, mail policy is not constitutional, defendants are entitled to qualified immunity from liability for monetary damages because their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Foy v. City of Berea,* 58 F.3d 227, 232 (6th Cir.1995) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). Plaintiff is correct that defendants bear the burden of proof in establishing entitlement to qualified immunity, i.e., that they acted in their discretionary authority. *Harlow v. Fitzgerald,* 457 U.S. at 815, 102 S.Ct. at 2736; *Wolfel v. Sanborn,* 666 F.2d 1005, 1006 (6th Cir.1981). However, it is plaintiff's burden to show that defendants violated a clearly established right of which a reasonable person would have known. *Wegener v. City of Covington,* 933 F.2d 390, 392 (6th Cir.1991). This allocation of the burden of proof makes sense because it is plaintiff who is better positioned to plead those facts that would defeat qualified immunity, if such facts exist. *Veney v. Hogan,* 70 F.3d 917, 922 (6th Cir.1995). In assessing qualified immunity, a defendant's action is analyzed "in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Further, for a law to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Id.* at 640, 107 S.Ct. at 3039 (1987). If "officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096. And if a plaintiff fails altogether to state a claim of violation of clearly established law, defendants are entitled to dismissal on grounds of qualified immunity. *Cameron v. Seitz,* 38 F.3d 264, 273, n. 2 (6th Cir.1994); *Daugherty v. Campbell,* 935 F.2d 780, 783 (6th Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992).

A threshold question in the qualified immunity analysis is "whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1792, 114 L.Ed.2d 277 (1991). It is well settled that a prisoner asserting a claim of interference with his access to the courts must plead and prove that he has been prejudiced with regard to specific litigation. *Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir.1985). To state a First Amendment claim, the plaintiff must show that he has suffered some legal or judicial denial, injury or impediment by the defendant's actions. *Id.* Plaintiff has made no such showing. Plaintiff has not alleged facts sufficient to state a claim for interference with his access to the court, much less raise a genuine issue of fact for trial on this issue. Plaintiff has failed to demonstrate that the mail in question was mishandled in any way. Contrary to the requirements of the new mail policy, plaintiff has failed to show that he requested to be present at the opening of his mail, and that the Attorney General's Office mail was marked "privileged" or "confidential," and that the envelope contained the full name of a licensed attorney as a part of the return address. Also, the undisputed record shows that the mail in question was not in fact confidential; it was courtesy copies of pleadings filed by Attorney General's Office. The Court also notes that on more than one occasion prior to *Muhammad,* the Sixth Circuit affirmed dismissal of prisoners' claims that opening mail from the Michigan Attorney General's Office outside the prisoner's presence violated the prisoner's constitutional rights. *See e.g., Traylor v. Letts,* 4 F.3d 994, 1993 WL 307085 (6th Cir. April 12, 1993) (court noted that the mailings were neither marked, nor were in fact, confidential), *cert. denied,* 510 U.S. 1051, 114 S.Ct. 706, 126 L.Ed.2d 672 (1994); *Eaddy–Bey v. Brown,* 979 F.2d 850, 1992 WL 337625 (6th Cir. Nov.17, 1992).

Finally, at a minimum, to deny qualified immunity in this instance would require that defendants (other than Marjorie VanOchten) be better interpreters of the relevant case law than the Corrections officials who drafted the revised policy.

For all these reasons, this Court finds that defendants are entitled to qualified immunity and denial of plaintiff's request for declaratory judgment. Plaintiff's complaint should be dismissed. The Court's legal analysis in this respect also requires denial of plaintiff's request for declaratory judgment that defendants VanOchten, Wright, and Westwood violated plaintiff's constitutional rights. The Magistrate Judge's findings to the contrary will be reversed.

### Plaintiff's Motion for Joinder of Claims and Motion for Finding of Rule 11 Violation

Plaintiff has requested permission to add to his complaint an additional count—that defendants have opened and withheld 22 additional pieces of plaintiff's Attorney General correspondence. Plaintiff asserts that although his request for joinder is untimely, it should be allowed because he wished to wait until the Report and Recommendation had been issued in order to weigh his chances of success on the issue.

Plaintiff's request will be denied. This Court has ruled that the current mail policy is constitutional, that defendants are protected by qualified immunity, and plaintiff has not shown that defendants' conduct caused him any prejudicial impediment to his access to the courts.

Plaintiff's requested ruling for a Rule 11 violation will be denied. Plaintiff maintains that defense counsel has made false and misleading argument to the court, without factual support. Plaintiff refers to defendants' argument that plaintiff has admitted he suffered no prejudice. Plaintiff argues that his admission referred only to defendants' refusal to mail a certain piece of correspondence, and not to any other claims. Assuming this is true, Rule 11 is not applicable. Plaintiff's complaints are hardly models of clarity. The fact that defendants interpreted plaintiff's admission too broadly is not sufficient reason to sanction defendants. Further, this Court's ruling today does not rest on any alleged admission on the issue of prejudice.

*Conclusion*

For the foregoing reasons, plaintiff's complaint will be dismissed. Defendants did not violate plaintiff's constitutional rights. Defendants are entitled to qualified immunity. Plaintiff's request for declaratory relief will be denied, and defendants' objections will be granted. Plaintiff's objections will be denied. Plaintiff's motion for joinder and for a finding of Rule 11 violation will also be denied.